**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| In re: | Case No.: 26-31864 |
| Trove Brewing, LLC. | Chapter 11 Case (Subchapter V) |
| Debtor. | |

---

## PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11

---

## INTRODUCTION

Trove Brewing, LLC (the "Debtor") proposes the following Chapter 11 Plan of Reorganization for Small Business under Chapter 11 (the "Plan") pursuant to the provisions of the Bankruptcy Code.

Prior to voting to accept or reject this Plan, all creditors are encouraged to read and review the Plan in its entirety. **Please read all sections carefully and discuss them with your attorney, as your rights may be affected. If you do not have an attorney, you should consult with one.**

The Debtor strongly encourages all creditors to vote in favor of the Plan. The Plan is in the best interests of creditors because the Debtor's continued operations will generate cash flow for distribution to creditors. The alternative to confirmation of the Plan, and distribution of the payments required under the Plan, is a chapter 7 liquidation, in which creditors will receive less than the projections in this Plan.

## [redacted] Article 1: Defined Terms

### 1.1 Defined Terms in the Bankruptcy Code.

The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

### 1.2 Additional Defined Terms.

(1) "Allowed" means with respect to any claim: (a) a proof of claim or a claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor or any other party-in-interest has not filed an objection; (b) a claim that either is not a Contested Claim or has been allowed by a Final Order; or (c) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtor.

(2) "Bankruptcy Code" means Title 11 of the United States Code.

(3) "Bankruptcy Rule" means a Federal Rule of Bankruptcy Procedure.

(4) "Chapter 11 Case" means the Debtor's pending case under the Bankruptcy Code, identified in the caption at the top of this Plan.

(5) "Confirmation Date" means the date on which the Confirmation Order is entered.

(6) "Confirmation Order" means the order entered by the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

(7) "Contested Claim" means: (a) a claim that was scheduled by the Debtor in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a claim that is not an Allowed claim because the Debtor or other party in interest has objected to allowance of the claim under sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured claim that is the subject of a motion for determination of the value of security under section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any claim held by a creditor against which the Debtor has demanded the recovery of property pursuant to section 502(d) of the Bankruptcy Code, without regard to whether such claim was previously an Allowed claim; (e) a claim that is subject to final adjudication in a proceeding outside the Court against one or more of the Debtor's insurers; or (f) a claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Final Order.

(8) "Court" means the United States Bankruptcy Court for the District of Minnesota, which properly exercises jurisdiction over the Chapter 11 Case.

(9) "Debtor" means Trove Brewing, LLC

(10) "Effective Date" means the first business day following the date that is 14 days after the entry of the Confirmation Order.

(11) "IRS" means the Internal Revenue Service.

(12) "Petition Date" means June 3, 2026.

(13) "Plan" means this chapter 11 plan of reorganization as amended, revised, or modified.

(14) "Reorganized Debtor" means the Debtor on and after the Effective Date.

### 1.3 Exhibits.

All exhibits to the Plan are hereby incorporated by reference and made part of the Plan. The exhibits to the Plan include the following:

Exhibit A  Liquidation Analysis

Exhibit B  Five-Year Cash Flow Projections

## Article 2: Background Information Regarding the Debtor, Liquidation Analysis and Feasibility

### 2.1 Description and History of the Debtor's Business.

The Debtor is a Minnesota limited liability company that started doing business in 2023. Its principal place of business is located at 1719 Country Road 42West, Burnsville, Minnesota 55306. The Debtor operates a brewery at that location. The Debtor only sells its brewed beer at the brewery and does not distribute to other locations. However, as an additional revenue source, the Debtor produces and packs beverages for third parties.

The Debtor's business is seasonal with the peak seasons in the fall, winter and spring.

### 2.2 Liquidation Analysis.

The Plan must provide that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim or equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**. As set forth in the liquidation analysis, if the Debtor is forced to liquidate its assets in chapter 7, unsecured creditors would less than they will under the Plan. As a liquidation will result in the Debtor ceasing operations, no future income from the Debtor will be available to pay creditors. Thus, the best recovery for unsecured creditors depends on the continued operation of the Debtor.

### 2.3 Ability to Make Future Plan Payments.

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor has provided projected financial information in **Exhibit B**. The Debtor's financial projections show that the Debtor will have sufficient revenue to make payments on the Plan. The final Plan payment is expected to be paid in December 2031.

## Article 3: Classification of Claims and Interests

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

The following table designates the classes of claims against the Debtor and specifies which of those classes are: (a) impaired or unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Expenses | No | No |
| N/A | Priority Claims | No | No |
| 1-A | Secured Claim – Choice Bank | Yes | Yes |
| 1-B | Secured Claim – North Star Leasing | Yes | Yes |
| 2 | Unsecured Claims | Yes | Yes |
| 3 | Equity Interest Holders | No | No |

## [redacted] Article 4: Treatment of Administrative Expense Claims and Priority Tax Claims

Under section 1123(a)(1) of the Bankruptcy Code, Administrative Expense claims and priority tax claims are not in classes and are treated as unclassified claims. Under the Plan, the unclassified claims shall receive the treatment described below:

### 4.1 Allowed Administrative Expense Claims.

Except as otherwise provided in this Article, holders of Allowed claims specified in section 507(a)(2) of the Bankruptcy Code, shall: (a) be paid in full in cash as soon as reasonably practical following the later of: (i) the Effective Date; (ii) the due date; or (iii) the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

Professional fees and expenses, including those of the Debtor's attorney and the Subchapter V trustee, incurred through the Effective Date and not previously Allowed shall be subject to Court approval. All holders of professional fees and expenses claims shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than 30 days after the Effective Date. The Reorganized Debtor shall pay any Allowed professional fees and expenses (a) as set forth in **Exhibit B** or (b) as agreed by the holder of such claim or (c) within 30 days after the court approves any professional fees. Sieling Law, the debtor's attorney, estimates that there is enough remaining in the retainer to pay the compensation owed to it. The estimated fees owed to the Subchapter V trustee are $4,500.00.

The Debtor does not believe there are any other administrative claims, but if any exist, they will be paid within 30 days after the Effective Date.

### 4.2 Priority Claims.

**Pre-petition Tax Claims**: The IRS filed a proof claim claiming a priority amount of $85.19 for estimated FUTA taxes. The Debtor is current on its payroll taxes and paying in the ordinary course of business. The claims will likely be amended to $0.00 by the effective date. If this amount has not been paid by the effective date, the priority amount owed to the IRS will be paid within 30 days after the Effective Date.

The pre-petition priority tax owed by the Debtor is nondischargeable pursuant to 11 U.S.C. §§ 523(a) and 1192(2). To the extent the Minnesota Department of Revenue and the IRS claim penalties or nonpriority taxes; such portions will be treated as a Class 2 claim, general unsecured claims.

All other Allowed claims not specifically treated in this Section and entitled to priority under section 507(a) of the Bankruptcy Code shall be paid in full in cash as soon as practicable following the later of: (a) the Effective Date, (b) the due date, or (c) the date on which such claims are Allowed.

## Article 5: Treatment of Classified Claims and Interest

**Class 1-A: Choice Financial Group ("Choice")**

Class 1-A consists of the secured claim of Choice pursuant to certain agreements. The estimated total amount owed to Choice is $615,000.00. The Choice indebtedness is secured by a lien on nearly all assets of the Debtor and by a third position mortgage on the Crane homestead located at 16476 Dodd Lane, Lakeville, Minnesota 55044. The estimated fair market value of the Crane Homestead is $449,000.00. The balance owed on the first mortgage is $207,000.00 and balance of the second mortgage is $175,000.00. Accordingly, the Choice indebtedness is secured by approximately $68,000.00 of equity in the Crane Homestead.

To satisfy Claim 1-A in full, the Debtor will pay a total of $157,000.00, plus 6.75% interest, amortized over five years. During 2027, the monthly payment will be $2,696.63. From January 2028 through December 2031, the monthly payment will be approximately $3,188.80.

The Debtor's obligation to pay Choice shall be secured by the existing liens and mortgages, which shall have the same priority, dignity, and effect as the pre-petition lien and mortgages as of the Petition Date. After Choice receives the payment pursuant to this Article, Choice shall execute a release of its liens on the Debtor's assets and the Crane Homestead, including, without limitation, filing a termination of its UCC financing statement and mortgage satisfaction to reflect the full satisfaction, settlement, release, and discharge of the Allowed Class 1-A claim.

If payments to Choice are timely paid, Choice agrees to forbear from all collection activity against Angela and Jeffery Crane. Upon payment in full pursuant to this Article, Choice shall release the Cranes and forgive any amounts owing pursuant to any guarantee executed by the Cranes in favor of Choice.

**Class 1-B: North Star Leasing ("NorthStar"):**

Class 1-B consists of the secured claim of North Star pursuant to certain agreements for the sale of kegs. The estimated total amount owed to North Star is $4,800.00, which is secured by certain kegs used by the Debtor. However, the Choice lien is superior to the NorthStar lien and there is no equity remaining in the kegs after considering the Choice indebtedness. The Class 1-B claim shall be deemed allowed in the amount of $0.00. The remaining balance totaling approximately $4,800.00 shall be treated as a general unsecured claim in Class 2, which is further

described below. The Debtor's obligation to pay the holder of Claim 1-B under the Plan shall be secured by the existing liens of such holder.

**<u>Class 2: General Unsecured Claims.</u>**

Class 2 consists of all Allowed unsecured claims against the Debtor that are not entitled to priority and are not classified elsewhere in this Plan. Pursuant to the Bankruptcy schedules and the filed proofs of claim, the Debtor believes the general unsecured claims total less than $50,000.00.

Holders of Allowed Class 2 claims shall receive their pro rata share of $8,000.00, which will be dispersed in November 2029.

Nothing contained in this Plan shall restrict the Debtor or the Reorganized Debtor from objecting to, contesting, or seeking to avoid a Class 2 claim as permitted under the Bankruptcy Code or otherwise applicable law. The payments to the holder of the Class 2 claims pursuant to this Article shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 2 claims.

**<u>Class 3: Equity Interest Holders.</u>**

Equity Interest Holders are people who hold an ownership interest in the Debtor. Each equity interest shall retain their equity interest in the Debtor.

## [redacted] Article 6: Distributions and Claims Administration

### 6.1 Payments under the Plan.

Payments under this Plan shall be made by check (mailed with first class postage pre-paid), ACH, or wire transfer to the holder of each Allowed claim. If made by check, payments shall be mailed to the claim holder at the address listed on its proof of claim as of the Confirmation Date, or if no proof of claim has been filed by the Confirmation Date, to the address listed on the Schedules as of the Confirmation Date. Holders of Allowed claims as of the Confirmation Date may contact the Reorganized Debtor to amend their addresses or bank account information at:

Trove Brewing, LLC
Attn: Angela Crane
1719 County Rd 42 W
Burnsville, MN 55306

### 6.2 Delay of Distribution on Contested Claims.

No distribution will be made on account of a Contested Claim unless such claim is Allowed by a final non-appealable order.

## Article 7: Executory Contracts and Unexpired Leases

### 7.1 Acceptance and Rejection of Contracts and Leases Generally.

The Debtor's contract with Aurora Investments, LLC shall be assumed as of the Effective Date. The Debtor will continue to pay timely regular monthly rent and Common Area Maintenance fees (CAMs), pursuant to the following schedule:

| Year | Regular Rent Payment | CAMs |
|---|---|---|
| 2027 | $6,800.00 | $3,500.00 |
| 2028 | $6,900.00 | $3,605.00 |
| 2029 | $7,000.00 | $3,713.08 |
| 2030 | $7,083.33 | $3,824.50 |
| 2031 | $7,200.00 | $3,939.25 |

The regular rent payment will be due the first week of each month and the CAMs payment will be due the third week of each month. So long as the foregoing amounts are paid, the Landlord will not charge extra rent or CAMs to the debtor during the term of the Plan.

All other executory contracts, unexpired leases, or other agreements that are not assumed herein shall be deemed rejected as of the Effective Date. Without limitation, this specifically includes the contract with Vestis Services. Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all such executory contracts, unexpired leases, and other agreements.

To the extent not subject to a claim filing deadline set forth in any prior or subsequent notice or order, claims arising out of the rejection of an executory contracts or unexpired lease pursuant to this Article of the Plan must be filed with the Court within 30 days after the entry of the Confirmation Order and, upon allowance, shall be paid as a general unsecured creditor.

## Article 8: Implementation and Effect of Confirmation of the Plan

### 8.1 Title to and Vesting of Assets.

All property of the Debtor and the estate is dealt with by this Plan; therefore, on the Effective Date, to the full extent authorized by section 1141(b) of the Bankruptcy Code, all property of the Debtor and the estate vests in the Reorganized Debtor and such property is free and clear of all liens, encumbrances, claims, and interests of creditors, including any notices of *lis pendens*, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained.

### 8.2 Preservation and Settlement of Causes of Action.

In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the reorganized Debtor shall retain all causes of action, including without limitation causes of action that may exist under sections 542, 544 through 550 and 558 of the

Bankruptcy Code or under similar state laws (collectively, the "Retained Actions"). The Debtor does not believe there are any viable actions at this time; however, should the Debtor recover any sums of money on a cause of action under the bankruptcy code, such funds will be disbursed pro-rata to unsecured creditors.

**8.3 Management and Officer Salary**

From and after the Effective Date, the Reorganized Debtor may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan. From and after the Effective Date, the Reorganized Debtor shall continue to be managed as it was prior to and during the Chapter 11 Case. The compensation arrangements for Angela Crane and Jeffery Crane shall remain the same as they were pre-petition with the Debtor, subject to periodic adjustment by the Reorganized Debtor in the ordinary course of its business operations after the Effective Date and as set forth in **Exhibit B**. The Debtor will not pay the Cranes for any other claims they might have against the Debtor until all payments have been made as set forth in this plan.

**8.4 Discharge.**

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from all claims that arose before confirmation of this Plan, except that the Debtor will not be discharged of any debt:

(a) imposed by this Plan; or

(b) to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any claim provided for in this Plan until the Court grants a discharge on completion of all payments due within the five years of this Plan, or otherwise provided in section 1192 of the Bankruptcy Code.

A discharge under this Plan discharges, waives, and releases the Debtor from any debt or claim that arose before the Effective Date and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether or not: (a) a proof of claim was filed or deemed filed under section 501 of the Bankruptcy Code; (b) such claim is Allowed under section 502 of the Bankruptcy Code; or (c) the holder of such claim has accepted the Plan. The payments of, distributions on account of, or treatments of claims in this Plan are deemed to satisfy in full all claims.

**8.5 Distribution of Plan Payments.**

If the Plan is confirmed pursuant to 11 U.S.C. 1191(a) or 1191(b), the Debtor will make all payments under this Plan notwithstanding the provisions of the Bankruptcy Code.

## Article 9: General Provisions

**9.1 Default.**

Nothing contained in this section will limit or affect any remedies available to creditors under the Bankruptcy code. If the Debtor fails to timely make a payment due to any class of this Plan, or if the Debtor fails to timely pay Professional Fees, the relevant creditor may send a written notice of default to the Debtor.

Unless the Plan expressly provides otherwise, if the Debtor fails to cure within 30 business days of such notice from a creditor, the relevant creditor shall be entitled to obtain stay relief with respect to any collateral subject to its liens. All unsecured creditors shall be entitled to treat this Plan as a contract and a default hereunder as a breach of contract by the Debtor.

**9.2 Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**9.3 Binding Effect.**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**9.4 Controlling Effect.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Minnesota govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

IN WITNESS WHEREOF, the undersigned have executed this Plan of Reorganization for Small Business under Chapter 11 as of September 1, 2026.

Trove Brewing, LLC

*s/ Angela Crane*
By: Angela Crane
Its: Owner

SIELING LAW, PLLC

By: *s/ Mary F. Sieling*
Mary F. Sieling, (#389893)
12800 Whitewater Dr, Ste. 100, #3201
Minnetonka, MN 55343
Phone: 612-325-1191 Email: mary@sielinglaw.com

Attorney for the Debtor

**Trove Brewing, LLC**
**Liquidation Analysis**

| Asset | | Gross Value |
|---|---|---|
| Cash and bank deposits | | $5,000.00 |
| Raw Materials and Work in Progress | | $2,000 |
| Finished product inventory | | $3,500 |
| Brewing Equipment, Growler Machine, Kegs, Fermenters, Coolers | | $77,760 |
| Furniture, décor and dishes | | $1,000 |
| Total: | $89,260.00 | |

**Chapter 7 Distribution**

| | |
|---|---|
| Choice Bank (secured claim of $615,000) | $89,260 |
| North Star Leasing (secured claim of $3,500) | $3,500 |
| Chapter 7 Administrative Claims | $0.00 |
| Priority Claims and other Unsecured Creditors | $0.00 |

| Line Item | 2027 | 2028 | 2029 | 2030 | 2031 |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| Pull tabs | 6000 | 6000 | 6000 | 6000 | 6000 |
| THC Production | | | | | |
| TAPROOM | 410,000 | 435,000 | 458,000 | 463,000 | 473,000 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total Income | 416,000.00 | 441,000.00 | 464,000.00 | 469,000.00 | 479,000.00 |
| | | | | | |
| COST OF GOODS SOLD | | | | | |
| Brewing Chemicals - Triton | 1080 | 1200 | 1300 | 1400 | 1500 |
| Brewing Gas - CM2 | 6000 | 6200 | 6800 | 6800 | 6800 |
| Guest Beverages and Snacks (COGS) | 2400 | 2500 | 2500 | 2700 | 3000 |
| Seltzer | 1200 | 1200 | 1200 | 1200 | 1200 |
| Webresturants | 1800 | 1800 | 1800 | 2000 | 2000 |
| Ingredients | 24000 | 28000 | 30000 | 32000 | 34000 |
| Total COGS | 36,480.00 | 40,900.00 | 43,600.00 | 46,100.00 | 48,500.00 |
| Gross Profit | 379,520.00 | 400,100.00 | 420,400.00 | 422,900.00 | 430,500.00 |
| | | | | | |
| OPERATING EXPENSES | | | | | |
| Weekly events, Initials Game | 4000 | 6500 | 7000 | 7500 | 8500 |
| Bank Charges | 120 | 120 | 120 | 120 | 120 |
| Bond | | | | | |
| Bookkeeping Fees | 5400 | 5500 | 5800 | 6000 | 6500 |
| Cams and Taxes | 42000 | 43260 | 44557 | 45894 | 47271 |
| TTB Tammer | 540 | 540 | 540 | 540 | 540 |
| Owner Salary | 61000 | 65000 | 65500 | 65500 | 65500 |
| Insurance | | | | | |
| Unsecured Creditor Payment | 0 | 0 | 8000 | 0 | 0 |
| Liability | 8520 | 8520 | 8520 | 8520 | 8520 |
| Worker's Compensation | 900 | 1000 | 1100 | 1100 | 1100 |
| Total Insurance | 9,420.00 | 9,520.00 | 17,620.00 | 9,620.00 | 9,620.00 |
| SBA/Choice Bank Payment | 32359.56 | 38265.61 | 38265.61 | 38265.61 | 38265.61 |
| License Fees | 0 | 0 | 0 | 0 | 0 |
| POS Expense | 1548 | 1600 | 1800 | 1900 | 2000 |
| Rent | 81600 | 82800 | 84000 | 85000 | 86400 |
| Security System | 420 | 420 | 420 | 420 | 420 |
| TVs | 3000 | 3000 | 3000 | 3000 | 3000 |
| Attorney fees | 0 | 0 | 0 | 0 | 0 |
| Taproom Music Service | 240 | 300 | 400 | 500 | 600 |
| Taproom Supplies - Vestis | 7008 | 7100 | 7200 | 7200 | 7200 |
| Trustee Fees | 4500 | 0 | 0 | 0 | 0 |
| Sales Taproom Tax | 32400 | 33000 | 34000 | 36000 | 37000 |
| Utilities | | | | | |
| Electric | 18000 | 18500 | 18800 | 19000 | 19500 |
| Gas | 9300 | 9600 | 9900 | 10000 | 10500 |

| | | | | | |
|---|---|---|---|---|---|
| **Internet** | 3260.4 | 3400 | 3500 | 3500 | 3500 |
| **Total Utilities** | 30,560.40 | 31,500.00 | 32,200.00 | 32,500.00 | 33,500.00 |
| **Wages** | | | | | |
| **ER Payroll Tax Expense** | 6000 | 6500 | 7500 | 8000 | 8500 |
| **Payroll Processing Fee** | 0 | 0 | 0 | 0 | 0 |
| **Tips paid** | 37000 | 38000 | 40000 | 42000 | 42000 |
| **Tap Room Payroll** | 20000 | 26400 | 30000 | 32000 | 32000 |
| **Total Wages** | 63,000.00 | 70,900.00 | 77,500.00 | 82,000.00 | 82,500.00 |
| **Total Expenses** | 379,115.96 | 399,325.61 | 419,922.61 | 421,959.61 | 428,936.61 |
| **Net Operating Income** | 404.04 | 774.39 | 477.39 | 940.39 | 1,563.39 |
| **OTHER INCOME / (EXPENSE)** | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Net Income** | 404.04 | 774.39 | 477.39 | 940.39 | 1,563.39 |